DOROTHY NELSON, Plaintiff-In-Error, v. ETTA MAE MOONEYHAN, J. W. Mooneyhan, Ellis G. Boxx and E. Leonard Boxx, Defendants-in-Error.
—426 S.W.(2d) 519.

Western Section.   September 18, 1967.

Rehearing Denied December 14, 1967.

Certiorari Denied by Supreme Court April 1, 1968.

Walter Buford, Memphis, for plaintiff in error.

Fred Ivy, Jr., Memphis, for Mooneyhans, Nelson, Norvell, Wilson, McRae, Ivy & Farmer, Memphis, of counsel.

John J. Thomason, J. Harold Ellis, Memphis, for Boxx.

AVERY, P.J.(W.S.). This is an action for personal injury brought by Dorothy Nelson, who was plaintiff in trial Court, against Etta Mae Mooneyhan, driver, and J. W. Mooneyhan, owner of car in which she was riding as a guest, on the right side of the rear seat. Pearly

Walton is the guest not involved as a litigant in this cause, who was on the right side of the front seat, which car was struck in the rear by a car driven by Minerva Clark and which Clark car was struck by a car driven by defendant, Ellis G. Boxx and owned by defendant, Leonard Boxx. There was another car in front of plaintiff's car, which was not directly involved and which left the scene, the driver and owner of which seems to be unknown.

This accident or collision occurred on Highway 61 south at a time when that which we will refer to as the "unknown car" was the forward car, the Mooneyhan car was the first following car, the Clark car was the second following car and the Boxx car was the third following car.

It appears that at the time and place of the accident the said highway was being repaired or was under construction and that there was only one lane of traffic in each direction. The driver, Minerva Clark, was the owner of the car she was driving. The defendants in the case are Etta Mae Mooneyhan, J. W. Mooneyhan, Ellis G. Boxx and E. Leonard Boxx.

The case was tried in Division 1 of the Circuit Court of Shelby County, Honorable W. Edward Quick, Judge, to a jury. At the conclusion of the plaintiff's proof and renewed at the conclusion of all the proof, defendants Mooneyhan and Boxx moved for a directed verdict in their behalf. These motions were overruled and the jury charged by the Court.

After deliberation there was a verdict favorable to all defendants, Mooneyhans and Boxxes, and plaintiff's case dismissed with cost. Plaintiff saved exception to

the verdict and judgment of the Court, prayed an appeal, which was granted, perfected and the case was heard in this Court on June 27, 1967, taken under advisement and is now disposed of by this opinion.

In view of the results and errors assigned in this court by appellants and certain defendants, it seems proper to quote here a short statement of the negligence charged in the declaration. After setting out in Count I the residences and names of the parties and the fact the plaintiff is suing for $60,000 damages for personal injury, that count merely states in its last sentence the following:

"The cause of action in this case arose in Shelby County, Tennessee, on the 14th day of December, 1963, as a result of an automobile collision."

This count does not allege any negligence against any person. Immediately following that statement of the declaration is Count "II", followed by counts designated "III, IV, V and VI". In Count II the factual situation is averred after there is set out in the first paragraph thereof the name of defendant with whom the plaintiff was riding; the direction in which the cars were moving; the order in which they appeared on the highway at the time. With reference to the car designated in this opinion as the "Unknown car", this Count II states:

"Plaintiff avers that the defendant, Etta Mae Mooneyhan, was driving the vehicle in which she was riding as a guest passenger and that the said Etta Mae Mooneyhan was, at the moment, talking to Pearly Walton, who was also a guest passenger riding in the right front seat. Plaintiff avers that someone in the automobile hollared 'look out' and the said defendant, Etta Mae Mooneyhan, hit her brakes violently to avoid

hitting the rear of an automobile in front of her, which had slowed down to a slow rate of speed.

"Plaintiff avers that when the said defendant, Etta Mae Mooneyhan, did suddenly and violently without warning hit her brakes, that the sudden braking threw the plaintiff, Dorothy Nelson, forward into the front seat of the automobile and that before the plaintiff could get settled back in her seat, she was violently struck in the rear of said automobile by an automobile which was driven by Minerva P. Clark, and that the said Clark vehicle was knocked into the rear of the automobile in which plaintiff was riding as a guest passenger by an automobile driven by the co-defendant, Ellis G. Boxx, and owned by the co-defendant, E. Leonard Boxx.

"Plaintiff avers that when the defendant, Etta Mae Mooneyhan, came to the sudden and violent stop, that the automobile immediately to the rear of her, driven by Minerva P. Clark, started stopping, but was unable to stop due to the fact that the Clark vehicle was struck in the rear by the automobile driven by the co-defendant, Ellis G. Boxx, and owned by the co-defendant, E. Leonard Boxx, and that the impact of the Boxx vehicle into the rear of the Clark vehicle, drove the Clark vehicle into the rear of the Mooneyhan vehicle.

"Plaintiff avers that as a direct and proximate result of the aforesaid collision, she received severe and permanent injuries to her back and entire nervous system. Plaintiff avers that the aforesaid collision caused plaintiff to suffer a ruptured disc in her lumbar spine and that plaintiff was required to be hospitalized for a long period of time where she incurred large

..hospital, doctors, drugs, and other medical expenses. Plaintiff avers that her treating physician has diagnosed her injury as permanent in nature and plaintiff avers that she is still suffering from her injuries."

At the bottom of this count she alleges she is entitled to recover $60,000 damages and asks for a jury trial.

In Count III she has stated that the matter set out in Counts I and II are reiterated and for additional cause of action she avers the acts of negligence of "Etta Mae Mooneyhan" which she alleges to be five acts of "common law negligence":

"1—That she failed to keep a proper lookout ahead.

2—That she did not have her vehicle under proper control.

3—That she failed to drive at a safe and reasonable speed under the existing traffic conditions.

4—That she failed to obey the rules of the road.

5—That she operated her vehicle in a dangerous and reckless manner considering the circumstances and conditions of the road existing at the time and place of the collision."

Count IV reiterates plaintiff's reliance upon the matters set out in Counts I, II and III and in that count she charges a statutory violation on the part of Etta Mae Mooneyhan to be a violation of T.C.A. Section 59-824, "Following too closely", also of Section 59-853 which is the statute authorizing towns and cities to establish speed zones and quotes the statute on Reckless driving. T.C.A. Section 59-858.

In these counts it is shown the car driven by Mrs. Mooneyhan belonged to J. W. Mooneyhan. In Count V, after relying upon the allegations contained in Counts I and II of the declaration, it is alleged that Ellis G. Boxx was guilty of common law negligence set out:

1—Failed to keep a proper lookout ahead.

2—Did not have his vehicle under proper control.

3—Failed to avoid the collision when same became or should have become apparent to him, that he had the last clear chance to avoid such collision.

4—That he failed to drive at a safe rate of speed under existing circumstances.

5—That he failed to obey the rules of the road.

6—That he operated his vehicle in a dangerous and reckless manner.

In Count VI, after relying upon the facts and averments in Counts I, II and V, it is alleged that Ellis G. Boxx was guilty of statutory negligence, T.C.A. Section 59-824, following too closely, 59-853, which is establishment of speed zones and Section 59-858, which is the reckless driving statute in willful or wanton disregard for the safety of persons or property. Then it alleges that the respective drivers of the cars were driving their vehicles with the consent, permission, and acting within the scope of the agency of the respective owners.

The Mooneyhans filed a plea of general issue, simply saying, ''they are not guilty of the matters in the plaintiff's declaration alleged,'' and are represented by Attorney John Thomason. The Boxxes filed a motion to strike Counts II and V and for their grounds allege in these

two counts they are in truth and fact not independent causes of action from Count I, but in truth are part of and dependent upon said actual allegations designated Count I. That motion was overruled by the Court.

Thereupon, the Boxxes filed a plea of general issue in which they say they are not guilty and also in the second plea say the accident was occasioned by the want of care of the plaintiff, which proximately contributed to bring about the injury.

Thereafter, the plaintiff moved that defendants Mooneyhans be required to plead specifically, which motion was granted and the Mooneyhans filed special defensive pleas, the principal part of which is denying all negligence of every kind, and they state:

"The defendants further admit that the Clark vehicle was propelled into the defendant vehicle after struck by the Boxx vehicle, but they deny that either collision was proximately caused by any negligence on the part of these defendants, and they deny that these defendants were guilty of any negligent act or omission which proximately caused any injuries or damages on the part of the plaintiff."

They further plead that the driver of the Mooneyhan car stopped immediately before the collision and that while she was keeping a lookout ahead, obeying all the rules and denying any negligence whatever, they plead:

"that at the time and place described the defendant driver observed a vehicle in front of her, coming to a stop, and that she brought her own vehicle to a stop behind the stopping vehicle in front."

Then they say that after she had stopped she was suddenly hit from the rear by the car which had been

previously struck by the vehicle driven by defendant Boxx. In this plea they set out the negligence of Boxx:

1—Failure to keep a proper lookout ahead;

2—Failure to have his vehicle under proper control;

3—Failure to avoid a collision when he saw or should have seen a collision was about to occur;

4—Failure to drive at a safe and reasonable rate of speed;

5—Failure to drive at a safe and reasonable speed under traffic conditions;

6—Failure to obey the rules of the road;

7—Failure to keep a proper interval between his vehicle and the Clark vehicle in front;

8—Negligently following the vehicle in front of him too closely.

After charging the violations of the statute of the driver of the Boxx car, after completely denying all negligence and averring that the accident, insofar as they were concerned, was an unavoidable accident.

Thereafter, on May 28, 1965, there was a motion filed by counsel for original plaintiff asking the Court to direct a witness, State Farm Mutual Insurance Company, to have its adjuster produce the tape and transcript taken at the discovery deposition and which in the general statement say what they want is:

"the tape of a telephone conversation had with the plaintiff, Dorothy Nelson, and a transcribed copy thereof, at his discovery deposition and in support of said application, plaintiff would show:"

They then went on to state the reasons for it, and after its service, this Insurance Company refused to file such papers and the motion was then taken before the Court by application for an order to direct, this motion was taken under advisement and thereafter the Court held the motion was not well taken and refused to make such direction and overruled the motion.

Thereafter the Boxxes, through their attorney, filed special pleas in which they deny that any impact of the vehicle referred to as the Clark vehicle and the Boxx vehicle drove the Clark vehicle into the rear of the Mooneyhan vehicle, and as to Count III they state that Etta Mae Mooneyhan was guilty of the acts of common law negligence. With respect to Count IV they say that the statutory allegations of negligence against Mooneyhan were correct and that she violated same. With respect to Count V, Ellis Boxx denies that he was guilty of the acts of negligence set forth therein numbered 1 through 6; and denies that he was guilty of any direct or proximate negligence. In reference to Count VI he admits the statutes of the State of Tennessee were valid, but denies that he was guilty of any negligence of any kind as charged therewith; admits that he was driving a vehicle that was owned by Leonard Boxx; denies that he was driving it by or with the consent of Leonard Boxx and that the family purpose doctrine was applicable between these defendants. In this plea they state:

"That defendant, Etta Mae Mooneyhan, made a sudden and violent stop, whereupon the said Minerva Clark attempted to pass the Mooneyhan vehicle on its right side, failed to clear it properly, striking the right rear of the Mooneyhan vehicle with the left front of her vehicle, which collision then threw the automobile of

Minerva Clark back into the traffic lane occupied by the defendant, Ellis G. Boxx, striking the vehicle driven by Boxx a minor blow. Defendants aver that as a result of this impact that the Clark vehicle did not strike the Mooneyhan vehicle, the only collision between those vehicles being the one that occurred prior thereto when Minerva Clark attempted to pass the Mooneyhan vehicle."

He then states that the direct and proximate cause of the accident, if any she had, was the combined and the concurrent negligence of the defendant, Etta Mae Mooneyhan and Minerva P. Clark.

It should be said at this time that the defendants Etta Mae Mooneyhan and J. W. Mooneyhan, saved exceptions to the judgment of the Court in failing to grant their motion for directed verdict at the conclusion of all the proof.

It is true that the Mooneyhans, through their counsel, preserved exceptions to the action of the Court in refusing to sustain their motion for directed verdict in holding that the evidence was sufficient to submit the question of the negligence of the Mooneyhans to the jury. It is also true they prayed and were granted an appeal and perfected it to this Court from the action of the Court in overruling that motion.

In support of the assignment of error by these former defendants, Mooneyhans, they state their authority for such action to be had in this court is:

Brenizer v. N. C. & St. L. Railroad Co., 156 Tenn. 479, 3 S.W.2d 1053;

Liakas v State, 199 Tenn. 298, 286 S.W.2d 856;

Hammond v. Union Planters National Bank, 189 Tenn. 93, 222 S.W.2d 377.

We first dispose of assignment of error filed by the Mooneyhans and they cite for such as they seek in this Court the foregoing cases.

It appears to us that none of the cases cited are authority for such action on the part of this Court as is sought by the assignment of error of these particular defendants below in whose favor the jury entered a verdict exonerating them of any negligence.

We hold that where there is a verdict from a jury favorable to a party to the lawsuit, which the lower court has sustained, to open doors for review of the action of the trial Court on the motion to direct a verdict, it very likely would flood the court with the determination of unnecessary questions. Particularly would this be true if the same appellate court that was asked to do such an action, would sustain the verdict of the jury and the judgment of the lower court thereon, and we do not believe the cases cited by learned counsel for the Mooneyhans in their motion:

William J. Oliver Mfg. Co. v. Slimp, 139 Tenn. 297, 202 S.W. 60;

Life & Casualty Ins. Co. v. Bradley, et al., 178 Tenn. 526, 160 S.W.2d 410;

Monday v. Reed, 47 Tenn.App. 656, 341 S.W.2d 755; and History of a Lawsuit, Carruthers, Sec. 441,

supports such contention.

It may be that under a proper procedure this Court has the right to pass upon an error of law in a case wherein there has been a verdict adverse to one of the

parties who might want that error of law determined, but that rule does not apply to a case as here for more reasons than one. In the first place, it is not necessary to cite any authority whatever for the right of this court to overrule any motion for action on the part of the court as relates to the action of the court below, unless it affected the verdict of the jury. Certainly the fact that his Honor, W. Edward Quick, the trial Judge, did not grant the motion after the verdict was rendered, could not affect the verdict which had been theretofore rendered. We know of no such authority as sought in this court by this defendant-appellant and the assignment of error by the Mooneyhans is overruled and there will be no further reference to such assignment.

We now come to the assignments of error of the plaintiff below, against whom the jury verdict was rendered and sustained by the trial Court.

Before passing to the assignments of error of the plaintiff-appellant, we think that we should state what the record shows about Minerva Clark not being sued in this case by the plaintiff Nelson. It is revealed that the drivers license of Minerva P. Clark had been taken up by the officers of the State after this accident, and the proof shows that she had paid $200.00 to Etta Mae Mooneyhan for a release from any liability as to her, she being the driver of the automobile in which the plaintiff was riding as a guest. It is explained by the Clark driver that she did that in order to get her driver's license back, reinstated and returned to her. Minerva Clark had testified that she saw the car in front of Mrs. Mooneyhan stop suddenly and that she saw Mrs. Mooneyhan stop. On cross examination she was asked:

"Q—Did she stop without striking the car in front of her?

A—Yes, sir.

Q—And were you able to stop without striking Mrs. Mooneyhan's car?

A—Yes, sir.

Q—And what was the next thing that you knew?

A—When I knew it, this Mr. Boxx had hit me, and my car hit her car.

Q—You say 'her car'; you mean the Mooneyhan car?

A—Yes, sir.

This witness further testified that she did not talk to Dorothy Nelson at the scene of the accident, but she testified that she, herself, was injured; that the weather was cold and she had been asked the question if anybody involved in the accident was injured and she said she did not remember because she didn't go to the other car and that she did not ask about them being injured. Then she was asked:

"Q—You have not been sued in this case, have you?

A—No.

Q—The fact is, is it not, that you paid for damages to the Mooneyhan automobile?

A—Sure, I paid it, because they had taken my driver's license, and the only way I could get her to sign the statement was to pay her $200, because she said that Boxx didn't have any insurance, and she wasn't sure of getting her money. The only way she would release my license, because my car tag license had

been taken up and my driving license, and that was the only way I had to go back and forth to work was to drive, because there are no buses go there.

Q—So Mrs. Mooneyhan signed a release—

A—Sent it to Nashville.''

She said the damage to her car was right. expensive in front and very little on the rear.

When this witness was under redirect examination or examination by Mr. Buford who represented the plaintiff, after she had testified about paying $200 to the Mooneyhans, Mr. Buford asked:

''Q—You stated that you were forced into paying the Moneyhan car $200 to get your driver's license?''

Mr. Thomason interposed an objection to that question, saying:

''We are going to object to Mr. Buford leading the witness. This is his witness, and he is not to phrase the question so as to suggest the answer.

Mr. Buford: Excuse me. Did you have your driver's license revoked in this case?

A—Yes, sir, I did, and car tag too.

Q—What was the purpose of your paying Mrs. Mooneyhan's car damage?

A—To restore my license back and get them back from Nashville. That was the only way they would restore them back, was to get a release from both parties.

Q—Was that the only reason you paid this money?

A—Yes, sir.''

So it is revealed that Mr. Buford introduced this witness, Mrs. Clark, in behalf of his client, the plaintiff, in her action for damages, and when asked about the matter here involved she, being his witness, advanced an unnecessary statement with respect to insurance, as hereinabove quoted.

The second assignment of error said:

"That the Learned Trial Court erred in letting the defendants introduced into evidence, over the objection of plaintiff, that they had liability insurance, and that the middle car did not have liability insurance; and to argue that that was the reason the middle car was not sued."

The third assignment of error is:

"The Learned Trial Court erred in refusing Plaintiff's Special Instruction to the Jury No. 3 that the jury should not consider insurance, or who had insurance, or discuss same in the jury room."

The fourth assignment of error is:

"That the Learned Trial Court erred in instructing the jury on the absent witness rule; and instructing the jury that they could infer that Dr. Haws would testify adverse to the plaintiff, when the said Dr. Haws was, and had been for over one year, absent from the jurisdiction of the Court and absent from the State of Tennessee."

The fifth assignment is:

"That the Learned Trial Court erred in refusing to give the jury Plaintiff's Special Instructions No. 1 and No. 2 that when two or more parties concurrently or

in combination cause injury to the plaintiff through negligence, the plaintiff has the legal right to sue one or more or none of the parties who are negligent; and that when one of several negligent joint tort feasors is sued alone, he may be found liable for the entire amount of the damage of the plaintiff. These special instructions were not covered in the general charge of the Court, and were absent from the Court's Instructions to the jury.''

Minerva Clark testified the car she was driving was owned by one Esau Owens; that she had just gotten off from work and traveling north on Highway 61.

■ Relating to assignment of error No. 2, and the particular clause, ''and to argue that that was the reason the middle car was not sued'', relates to the statement about insurance by Minerva Clark and the argument of counsel. None of the arguments were preserved in the record, and of course, to extract a clause from what is said to be an argument, without showing the whole argument, can not be considered by the Appellate Court.

Mr. Ellis Boxx, one of the defendants, the driver of the pickup truck alleged to be the rear following car, summarized as to how the accident happened as follows:

''Well, we were—I was headed north on Highway 61, and I seen—when I seen the accident happen, I seen Minerva Clark—she pulled out to go around and on the right-hand side of the road on the gravel, and when she did swing out, and I figured if she makes it, I figured she would make it around there—I didn't know for sure—and I kept on easing up, and I seen her hit, and when she hit, the front part moved on up, and I was too close to stop or do anything, and I swerved to

go around, and I couldn't make it there, and I hit my brakes and slid."

Substantially he says that the Clark car swerved to its right and moved up—evidently meaning to the right of theMooneyhan car—and that he, Boxx then turned to his left, but could not miss the Clark car.

He testified, in response to a direct question that the accident between Minerva Clark's car and the car in front of them happened before he was involved in the accident. He also testified that when he hit the car that it did not knock it into the car in front of it, he said the headlight was bent and bursted, a chrome light and a beam and a strip kind of dented in, was the damage to his car, but that it was a light dent. He also said he saw the damage on the '59 Buick and the "little old chrome piece that come around the back of the '59 Buick, it was bent, and the chrome piece around it and the tail light knocked out." He was asked whether or not before he saw Minerva Clark attempting to go around, if the car in front of her stopped, he said:

"I couldn't tell you. I was watching the car in front of me. I wouldn't know if she stopped or not. At the scene they told me—I heard that she was slowing down."

He said her front wheels were off on the gravel and that she struck the car in front of her, "the right back fender". He testified he was driving about 30 miles an hour. He further stated he was three or four car lengths behind the Mooneyhan car and a car length behind the Clark car.

Doris Boxx, 15 year old sister of Ellis Boxx and the daughter of defendant Leonard Boxx was in this truck

with Ellis Boxx at the time of this accident. Her version of how the accident occurred is as follows:

"The second car tried to pass the lady in front of her on the wrong side of the street, and she hit her, and we tried to keep from hitting her, and we turned to the left and we hit her."

That at the time the truck in which she was riding hit, the front accident had already happened.

■ There is no doubt that the jury could have arrived at the verdict that they did based upon the testimony of the driver of the Mooneyhan car, the Clark and Boxx cars. There is a sharp dispute between the plaintiff and other witnesses about just how the accident did occur, insofar as the proximate cause of the accident is concerned.

■ Before going into the second assignment of error which dealt with the matter of the voluntary statement on the part of witness, Minerva Clark, relative to what Etta Mae Mooneyhan had said about not suing certain parties involved and saying to her that the Boxxes had no insurance, it should be said there was no objection made to that statement at the time it was made and no motion for mistrial. Furthermore, even if there had been some objection made, which the record doesn't show, it certainly is not such error as would have affected the verdict of the jury. T.C.A. sec. 27-117.

In addition, the argument undertakes to support this assignment of error on the case of Woods v. Meacham, 46 Tenn.App. 711, 333 S.W.2d 567. That is an opinion by this section of the Court of Appeals, written for the Court by Judge Bejach. In that opinion he went elaborately into the question of incompetent proof with re-

spect to insurance. We specifically pointed out in that case that there was a deliberate attempt in the argument of counsel, which was preserved as a part of the record in that case, to get that matter before the jury notwithstanding the specific ruling of the Court and what the Court had said to him about it, and that it was a willful and deliberate attempt to bring that matter to the attention of the jury in that case. Not so in the case before us. That case is no basis for such contention.

█ In connection with the third assignment of error, which is levelled at the refusal of the Court to charge the jury on the failure of the Court to give in charge Special Instruction No. 3 to the effect the jury should not consider insurance. It is true that the Court did not instruct the jury or give in charge that specific request, but the whole charge embraces everything that is involved in this lawsuit, and it is clear that the statement with respect to insurance didn't affect the jury in any wise. It was not calculated to affect the jury, and in addition if it were calculated to have had any adverse effect on the jury, it would have been such as would have favored the plaintiff.

█ The fourth assignment is levelled at the failure of having the testimony of Dr. Haws, who was absent, and that the Court didn't properly charge the absent witness rule. As to the fourth assignment of error and instruction of the Court with respect to the absent witness rule, counsel for appellant Nelson seems to think the statement of the Court was levelled at the inference that a certain Dr. Haws was absent, and that he might testify adversely to the plaintiff had she procured him as a witness, to be the reason why he was absent. The Court said this:

"The Court further instructs the jury that if it is developed from the whole body of the proof, that if there is a witness or witnesses available to or under the control of one of the parties to the lawsuit, which witness or witnesses have within their knowledge material or pertinent facts concerning the matters under investigation, and the relations of that witness with one of the parties to the lawsuit is such that he would naturally favor that party, and that party to the lawsuit fails to call such witness without reasonable explanation of his failure to do so, the jury may infer that the witness' testimony would be unfavorable to the party failing to call the witness."

The Court then explained the value in lay witness testimony and expert testimony. He at no point mentioned Dr. Haws in the charge, and it can not be said that he did mean that reference to be applied to the absence of Dr. Haws, who, the objection said, was out of the State. Certainly there could be no harm done by the Court refusing that particular statement for the absence of Dr. Haws, had it been levelled at him, would have been as to the amount of damage, based on the injury, and his explanation of his effect of the injury on the body of the plaintiff, or the extent of the injury. In other words, it would go to the amount of damages, but before the jurors could ever get to that point, they would have to find some of the defendants guilty of proximate cause of the injury which the jury didn't do. Therefore, under the harmless error doctrine aforesaid, that refusal certainly didn't affect the verdict of the jury.

█ The fifth assignment of error is levelled at the refusal of the Court to give Special Instructions No. 1 and No. 2 relative to their responsibility in trying a case

where there is more than one defendant and where there is chain reaction which caused, if in fact it did cause, the injury of the plaintiff. The charge of the Court, we think, is particularly definite with respect to this particular matter and he, in effect, charged the jurors that their verdict could be for or against any one or more of defendants based upon the proof, and that one or more of the defendants would be liable for any damage inflicted, first having found, of course, that there was negligence of a proximate character resting upon one or more.

■ We are not required to find all the facts in any case where there is a jury verdict. It is not the province of this Court to find the facts in a jury case and as has been said so many times, the jury finds the facts and in a case where the jury has found the facts, if there is any competent proof to support the verdict of the jury and judgment of the Court, certainly we can not reverse it in the absence of some error on the part of the Court. This jury had the facts before it, the charge of the court is quite explicit, as we read it, and we read it twice, it covers every single necessary instruction to the jury, in a matter of this kind where there is a sort of chain reaction and the parties testified differently about what occurred.

The jury found in favor of the defendants, the trial Court, along with the jury saw and heard the witnesses, and he agreed as Judge and 13th juror, which must be always based upon the allegations of negligence set forth in the declaration or in the pleas.

This is a typical case where there are more than one defendant charged with proximate cause of negligence resulting in the injury, where defendants undertake to show to the Court that each of them is not guilty by

showing another defendant to be guilty. All of these matters were before the jury and the Court, they evaluated the strength to be given the testimony. There is ample proof to support the verdict. We find no error in the charge of the Court or in the ruling of the Court in any way. Consequently the verdict of the jury and the judgment of the Court thereon having approved it, we are constrained to overrule all assignments of error and affirm the verdict of the jury.

Judgment will be entered in accord with this opinion and the cost will be taxed against the plaintiff-appellant, Dorothy Nelson.

Carney and Bejach, JJ., concur.

## OPINION ON PETITION TO REHEAR

AVERY, P.J.(W.S.). After our opinion was filed in the above styled case the plaintiff-in-error, Dorothy Nelson, filed a document styled: ''Petition for Rehearing and for other or Additional Findings of Fact'' and in this petition states:

''The only thing in the Opinion filed in this cause, (should have been case) that might be interpreted as pertaining to the First Assignment of Error is the statement of the Court of Appeals as follows:

'' 'So it is revealed that Mr. Buford introduced this witness, Mrs. Clark, in behalf of his client, the plaintiff, in her action for damages, and when asked about the matter here involved she, being his witness, advanced an unnecessary statement with respect to insurance, as hereinabove quoted.' '' He then says:

''Appellant would first respectfully point out that this statement of the Court does not pertain to the First

Assignment of Error and the Court does not attempt to interpret Section 59-1229 of the Tennessee Code Annotated, set out in the First Assignment of Error.

"Please recall the interpretation of Section 59-1229 is a case of first impression in the State of Tennessee and needs to be interpreted by our appellate courts.

"Appellant would further respectfully point out that the Court of Appeals in its Opinion filed in this cause did not attempt to apply the facts at issue to Section 59-1229 of the Tennessee Code Annotated, nor did they attempt to interpret said statute as to the law."

We first call his attention to the fact that he has no assignment of error designated in his alleged assignments of error and brief as Figure I. If he will look at the copy of his assignments of error he will find that they begin on page two under the designation of roman numerals "II" Assignments of Error. Be that as it may, the petition to rehear is levelled at the failure of the Court to construe in the light of the facts in this case, T.C.A. Section 59-1229.

This Section of the Code is a part of Chapter 12 headed "Financial Responsibility of Owners or Operators". It deals with the suspension of drivers licenses and includes T.C.A. secs. 59-1201 to 59-1238. That exact section word for word, was originally carried into the same Chapter as T.C.A. sec. 59-1212.

I know of no reason why we should construe the Act, as suggested by the petition to rehear, and particularly this section, but he says:

"Although it is true that the first witness to testify as to the subject matter in Assignment of Error No. 1, was

·the plaintiff's witness, Clark, it must be respectfully pointed out that the damaging testimony was brought out on cross-examination by the appellee and that the appellant could not object to same since the Court ruled on the question in the opening address to the jury and the Court's ruling became the law of the case at the Trial Court level. Any further objection on the part of attorney for appellant would only make the testimony more damaging to the ears of the jury.''

He then reiterates by paraphrasing what he says took place. Going back to the record, the opening statement by neither counsel is shown, but there is a dialogue immediately following the statement by the Court:

''THE COURT: All right. Mr. Buford, you may put on your proof.

MR. BUFORD: There is a matter that I would like' to take up with the Court in the absence of the jury.

THE COURT: Gentlemen, will you all step into the Jury Room just a few minutes.

(Whereupon, in the absence of the Jury, the following proceedings were had, to-wit)

''MR. BUFORD: Your Honor, Mr. Ellis makes the statement in his opening address that the Clark vehicle has paid the Mooneyhan vehicle, is that correct, Mr. Ellis?

MR. ELLIS: That's correct.

MR. BUFORD: For damages. Now the true proof in' this is, Your Honor, that the Clark vehicle had no insurance, the middle car, and to keep from losing the driving privileges of the Financial Responsibility Act,

irrespective of fault or liability, they did pay for property damage, or part of the property damage, to keep from losing the driving privileges of the Clark vehicle.

I think this is a compromised negotiation which was really coerced through the Financial Responsibility Law, which has nothing to do with this lawsuit, and which I think is prejudicial and should not be heard by this Jury.

MR. ELLIS: If your Honor please,—Of course, she may claim that financial responsibility, or the threat of her losing her license motivated it. The proof will show that she made, and the jury is entitled to know that Minerva Clark, who is missing as a Defendant in the lawsuit, has previously paid Mrs. Mooneyhan. She has a right to explain her method, or mode, or why doing. It is certainly not prejudicial to this lady to show here that this vehicle that is not sued, or the car, or vehicle that is not sued, is certainly not prejudicial to this client to show that the reason she is not sued, is because she has already paid the people in front of her. She can explain. I say she is entitled to explain why she made these payments.

THE COURT: If that negotiation, or transactions were had between Mrs. Clark and the Plaintiff, it might be of some basis for the complaints about it. Now, of course, if Mrs. Clark were asked on the witness stand if she were called as a witness by either party in the lawsuit, and asked on the witness stand if she had not made some payments to Mrs. Mooneyhan, I think that would be a competent question.

MR. ELLIS: I understand she is here under subpoena and will testify for the Plaintiff.''

After the petition for rehearing was filed, counsel for defendants-in-error filed a simple reply in which they said:

"that no new matters are raised in the Petition to Rehear and that the opinion of the Court heretofore filed and prior briefs and arguments covered all trenchant matters."

It is pointed out in the original opinion that in a case determined by a jury so far as facts are concerned, we only find the facts necessary to support the verdict or examine the record for that purpose, unless there is error by the Court. We also pointed out exactly how this situation of the defendant, Minerva Clark, came about. We have read and reread our opinion and we overrule all the assignments of error, however, if counsel is entitled to have an interpretation of Section 59-1229, as it relates to the matters involved, it is noted that the first sentence in Section 59-1229 is:

"NEITHER THE REPORTS REQUIRED BY THIS CHAPTER, THE ACTION TAKEN BY THE COMMISSIONER PURSUANT TO THIS CHAPTER, THE FINDINGS OF THE COMMISSIONER UPON WHICH SUCH ACTION IS BASED, NOR THE SECURITY FILED AS PROVIDED IN THIS CHAPTER SHALL BE REFERRED TO IN ANY WAY, NOR BE ANY EVIDENCE OF THE NEGLIGENCE OR DUE CARE OF EITHER PARTY."

To us that means the documentary matters required by this Chapter and does not refer to some opinion that some witness who had been a defendant and had paid the damage which plaintiff had demanded, from saying why she had done so. Certainly, she did not

introduce any report or action of the Department of Safety nor attempt to do so. It is true that when the dialogue hereinbefore set forth was being had, attention was called to the Court that Mrs. Clark was a witness for plaintiff and would testify, not only that she would testify, but that she had made some payment to Mrs. Mooneyhan. The Court said:

"If it is competent in that connection, and I would feel certain it would be as explaining her position, if she takes the position it was not her fault, then she could certainly be asked the question, if you did not make a payment. And she, of course, could make any explanation she wished about that. But I think the evidence would be competent, and certainly would be material, and I think it would be competent. And if it is, then, of course, there could be no objection to making reference to it in the opening statement as part of the proof.

"I will overrule your objection then. I would permit Mrs. Clark to make any explanation that she wishes about it as to why she did."

Counsel for plaintiff-in-error did save an exception to what the Court said at that time, but we know of nothing that would have prevented him from excepting to the testimony when it was offered by Mrs. Clark and was brought out principally on his questioning.

█ It is our opinion that the petition for rehearing will have to be overruled because:

1—The action complained about did not influence the jury.

2—The law provides that the judgment of the Trial Court and verdict of the jury will not be reversed because

of alleged incompetent testimony and action by the Court unless we can affirmatively find that it affected the jury's verdict, and we do not so find.

We are asked again to find that the statement relative to insurance by this witness be held to be error, and again it is said that no reversal to be had on the statement made which is shown in the original opinion.

We are asked to consider again the fact that there were several parties sued and that the Court erred in not charging Special Requests relative to the liability of any one tortfeasor for all damages.

It is true that the petition to rehear brings nothing new from that which has heretofore been presented to this Court and fully covered in the original opinion. The petition to rehear is, therefore, denied. The cost of this petition to rehear will be paid by plaintiff-in-error.

Carney and Bejach, JJ., concur.